19 F.3d 12
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jacqueline EAGLESON, Defendant-Appellant.
 No. 93-5614.
 United States Court of Appeals, Fourth Circuit.
 Submitted Jan. 18, 1994.
Decided Feb. 28, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Chief District Judge. (CR-93-82-A)
 Alan H. Yamamoto, Alexandria, VA, for appellant.
 Helen F. Fahey, U.S. Atty., Charles A. O'Reilly, Special Asst. U.S. Atty., Alexandria, VA, for appellee.
 E.D.Va.
 AFFIRMED.
 Before MURNAGHAN, NIEMEYER, and HAMILTON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 A jury convicted Jacqueline Eagleson of mail theft by a postal employee in violation of 18 U.S.C. Sec. 1709 (1988). Eagleson appeals and challenges the sufficiency of the evidence. Finding that the prosecution presented sufficient evidence to convict Eagleson of the crime charged, we affirm.
 
 I.
 
 2
 Testimony at Eagleson's trial disclosed that she worked as a mail carrier for the U.S. Postal Service. A postal inspector prepared two pieces of mail. The inspector addressed the first letter to Janet Hunter, 108 Prosperity Avenue, Fairfax, Virginia.[1] The letter contained a bank credit card insert explaining the rules and regulations of the credit card. Instead of a credit card, however, the inspector secured a transmitter that approximated the size of a credit card inside the envelope. The inspector wanted a reasonable person to believe that the envelope contained a credit card. The transmitter emitted a slow beep when the wires remained connected. If someone removed the insert from the envelope, the transmitter would emit a very fast beep. The inspector monitored the transmitter's signal with a radio which used a special frequency. The second piece of mail consisted of a postcard addressed to an insurance company in Arlington, Virginia.
 
 
 3
 The inspector gave these two pieces of mail to a supervisor in Leesburg to see if they would be handled correctly by the mail carrier. The supervisor placed the letters in Eagleson's mail tray. Because the letters were addressed to other cities, Eagleson should have taken them to the "throw-back area" where they would be resorted and rerouted to the correct location.
 
 
 4
 The inspector entered the "look-out gallery," a suspended and enclosed aisle from which postal employees may be observed. From that vantage point, the inspector saw Eagleson place the postcard addressed to the insurance company beside her mail tray. When she picked up the letter addressed to Janet Hunter, she looked at it, felt it as if she were weighing the letter, and placed it in the bottom portion of her letter case. At that time, the inspector heard the transmitter's slow beep indicating that the insert had not been removed from the envelope. A short time later, Eagleson took the postcard to the throw-back area.
 
 
 5
 Before Eagleson left to deliver the mail, she placed the mail (including the letter addressed to Janet Hunter) in a letter case in the order in which it would be delivered. She left the post office, and the inspector followed her outside. He saw Eagleson put the trays of mail in the back of the delivery truck. She drove the post office vehicle to where she parked her private vehicle. She walked to her car carrying her jacket, opened the passenger side door, and leaned into the car. After she leaned into her car, the transmitter was activated and emitted a very fast beep indicating that Eagleson broke the wire connection. The inspector confronted Eagleson and saw the Janet Hunter letter open in her hand. Eagleson gave the opened letter to the inspector. The inspector testified that there is no reason that a letter carrier should open a letter addressed to someone else.
 
 
 6
 The jury found Eagleson guilty of mail theft. The district court sentenced her to two years probation, ordered her to serve sixty days in home confinement with work release, and fined her fifty dollars. Eagleson filed a timely appeal.
 
 II.
 
 7
 Eagleson asserts that the prosecution failed to present sufficient evidence to convict her of mail theft. We must uphold the jury verdict "if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." United States v. United Medical & Surgical Supply Corp., 989 F.2d 1390, 1402 (4th Cir.1993). "[A]n appellate court's reversal of a conviction on grounds of insufficient evidence should be 'confined to cases where the prosecution's failure is clear.' " United States v. Jones, 735 F.2d 785, 791 (4th Cir.) (quoting Burks v. United States, 437 U.S. 1, 17 (1978)), cert. denied, 469 U.S. 918 (1984). Finally, we must allow the government the benefit of all reasonable inferences drawn from the facts proven. Jones, 735 F.2d at 791.
 
 
 8
 To establish that Eagleson violated 18 U.S.C. Sec. 1709 (1988), the prosecution must show that: (i) Eagleson was an employee of the U.S. Postal Service; (ii) she embezzled a letter that came into her possession as a result of her employment; and (iii) the letter was intended to be conveyed by mail.[2] First, the parties stipulated that the Postal Service employed Eagleson at the time the theft occurred. Second, witnesses testified that Eagleson failed to take the letter addressed to Janet Hunter and entrusted to her by her position as a mail carrier to the throw-back area designated to reroute improperly routed mail. Instead, she examined the envelope, felt it, and appeared to weigh it in her hand before taking it to her car to open it. Finally, the letter was intended to be conveyed by mail because it was postmarked, contained proper postage, and was placed in Eagleson's mail tray to be distributed.
 
 III.
 
 9
 From this evidence, a jury could reasonably infer that Eagleson intended to embezzle the letter which appeared to contain a credit card and could find that the prosecution established the elements of mail theft beyond a reasonable doubt. Therefore, we affirm Eagleson's conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 The inspector testified that he did not recall whether a Prosperity Avenue existed on Eagleson's route
 
 
 [2]
 The text of Sec. 1709 reads, in pertinent part, as follows:
 Whoever, being a Postal Service officer or employee, embezzles any letter, ... or mail, or any article or thing contained therein entrusted to him or which comes into his possession intended to be conveyed by mail, or carried or delivered by any carrier ...; or steals, abstracts, or removes from any such letter, ... or mail, any article or thing contained therein, shall be fined not more than $2,000 or imprisoned not more than five years, or both.